**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNIFER SETLOCK,<br><br>    *Plaintiff,*<br><br>  v.<br><br>HEXCEL POTTSVILLE CORPORATION<br><br>and<br><br>HEXCEL CORPORATION,<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## I.  INTRODUCTION

Plaintiff, Jennifer Setlock ("Plaintiff"), brings this action against her former employers, Hexcel Pottsville Corporation and Hexcel Corporation (collectively, "Defendants" or "Hexcel"). Defendants discriminated against Plaintiff because of her disabilities, and retaliated against her for seeking reasonable accommodations for her disability and taking protected medical leave, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks all damages allowable under law, including back pay, front pay, compensatory, liquidated damages, punitive damages, attorneys' fees and costs, and all other relief under applicable federal, state, and local laws that this Court deems appropriate.

II.    **PARTIES**

1.    Plaintiff is an individual and resident of the Commonwealth of Pennsylvania.  She currently resides in Saint Clair, Pennsylvania.

2.    Plaintiff was employed with Defendants for at least twelve hundred and fifty (1,250) hours of service during the twelve (12) month period before taking her FMLA leaves.

3.    Defendant Hexcel Pottsville Corporation is incorporated in Delaware with its principal place of business located at 172 Industrial Park Road, Saint Clair, Pennsylvania 17970.

4.    Defendant Hexcel Corporation is incorporated in Delaware with its principal place of business located at 281 Tresser Boulevard, 16th Floor, Stamford, Connecticut 06901.

5.    At all times material hereto, Defendants have had integrated operations, have had shared ownership, have had common management, and/or have had centralized control of their employment matters.

6.    At all times material hereto, Defendants have acted as a single employer, joint employers, and/or alter egos.

7.    The operations of Defendants are substantively consolidated.

8.    Defendants are engaged in an industry affecting interstate commerce that regularly conducts business in the Commonwealth of Pennsylvania.

9.    At all times material hereto, Defendants employed more than fifty (50) individuals.

10.    At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

11.    At all times material hereto, Defendants acted as an employer within the meaning of the statutes that form the basis of this matter.

12.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

III.    **JURISDICTION AND VENUE**

13.     The causes of action that form the basis of this matter arise under the ADA, the FMLA, and PHRA.

14.     The District Court has jurisdiction over Count I (ADA), pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. §1331.

15.     The District Court has jurisdiction over Count II (FMLA) pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. §1331.

16.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f) because a substantial part of the events or omissions giving rise to the claims have occurred within this District.

18.     On or about July 11, 2024, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination alleged herein.  This Complaint of Discrimination was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein, and marked as **Exhibit "1"** is a true and correct copy of Plaintiff's Complaint of Discrimination (with personal identifying information redacted).

19.     On or about January 22, 2026, the EEOC issued Plaintiff a Notice of Right to Sue regarding her Complaint of Discrimination.  Attached hereto, and marked as **Exhibit "2"**, is a true and correct copy of the Notice of Right to Sue (with personal identifying information redacted).

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

21.     Plaintiff began working at Defendants in or around April 1996.

22.     Plaintiff last held the position of Special Process Bond Operator and worked on the first shift.

23.     In her position, Plaintiff assembled products and verified product tolerances using measuring devices including protractors, scales, calipers, micrometers, and other inspection tools.

24.     Plaintiff also was responsible for inspecting and setting up a variety of hand and power tools including a band saw, hand router, air sander, cookie cutter, and hand sander.

25.     Plaintiff last reported to Gregory Stevenson ("Stevenson"), Supervisor.

26.     Stevenson reported to Ryan Setlock ("R. Setlock"), Production Manager, and R. Setlock reported to Mark Gates ("Gates"), Plant Manager.

27.     Plaintiff consistently performed her job duties in a highly competent manner throughout her nearly twenty-eight (28) years of employment with Defendants.

28.     In or around June 2021, Plaintiff began reporting to Stevenson.

29.     Stevenson had no role in Plaintiff's hire at Defendants.

30.     In January 2023, Plaintiff was diagnosed with fibroids and excessive bleeding and was told by her doctor that she would need to undergo a dilation and curettage procedure to determine whether Plaintiff needed to undergo a hysterectomy.

31.     On March 10, 2023, Plaintiff was out of work and underwent a dilation and curettage procedure.

32.     In March 2023, following the above, Plaintiff's doctor told her that she needed to undergo a hysterectomy.

33.     In March 2023, following the above, Plaintiff told Heather Houghton ("Houghton"), Regional Human Resources Manager, Amanda Ward ("Ward"), Assistant Human Resources Manager, and Amanda Dixon-Shirey ("Dixon-Shirey"), Assistant Human Resources Manager, that Plaintiff was diagnosed with fibroids and excessive bleeding and that she would need to undergo a hysterectomy.

34.     On or about April 17, 2023, in a meeting with Stevenson, Defendants issued Plaintiff a Verbal Warning.

35.     Plaintiff's performance did not warrant a Verbal Warning.

36.     The stated reason was Defendants' policy under which employees who take off work, including for medical reasons, three (3) times within a six (6) month period receive a Verbal Warning.

37.     The absences for which Plaintiff received the Verbal Warning were for disability-related absences in connection with her medical diagnoses and need for a hysterectomy.

38.     Defendants issued Plaintiff a Verbal Warning because of her disability and/or for seeking accommodations for her disability, including a medical leave of absence.

39.     On April 24, 2023, Plaintiff went out on a medical leave of absence.

40.     On April 24, 2023, Plaintiff underwent a hysterectomy.

41.     From April 24 to June 6, 2023, Plaintiff was out of work on a medical leave of absence.

42.     On June 6, 2023, Plaintiff returned to work from her medical leave of absence.

43.     In July 2023, Defendants hired Ida Searle ("Searle"), Special Process Bond Operator, reporting to Stevenson.

44.     On December 13, 2023, Plaintiff went out on a medical leave of absence due to being diagnosed with strep throat.

45.     Following the above, Plaintiff told Houghton that she had strep throat, would be out of work, and would return on December 18, 2023.

46.     From on or about December 13 to 18, 2023, Plaintiff was out of work on a medical leave of absence.

47.     On December 18, 2023, Plaintiff returned to work from her medical leave of absence.

48.     Plaintiff submitted a doctor's note to Houghton in connection with her medical leave of absence.

49.     In or around late December 2023 and following the above, in a meeting with Stevenson, Defendants issued Plaintiff a Verbal Warning.

50.     Plaintiff's performance did not warrant a Verbal Warning.

51.     The stated reason was Defendants' policy under which employees who take off work, including for medical reasons, three (3) times within a six (6) month period receive a Verbal Warning.

52.     Defendants issued Plaintiff a Verbal Warning because of her disability and/or for seeking accommodations for her disability, including a medical leave of absence.

53.     On February 5, 2024, Plaintiff went out of work for a doctor's appointment and learned that she would need to undergo a tonsillectomy.

54.    On February 6, 2024, in a meeting with Dixon-Shirey, Plaintiff stated that she would need to undergo a tonsillectomy and would need to take an FMLA leave of absence.

55.    Plaintiff also stated in the above meeting that she would likely be out of work for a few weeks.

56.    Plaintiff was treated differently and worse, and in a more hostile and dismissive manner than non-disabled employees and/or employees who had not sought reasonable accommodations for a disability[1] and/or employees who had not required medical leave were treated.  Examples of the same include, without limitation:

   a.  Plaintiff's performance was unjustly criticized.

   b.  Plaintiff was ignored.

   c.  Plaintiff was falsely accused of things she did not do.

   d.  Plaintiff was interacted with in an intimidating manner.

   e.  Plaintiff was belittled.

57.    On February 9, 2024, three (3) days after Plaintiff informed Defendants of her need for FMLA leave, in a meeting with R. Setlock, Houghton, and Jonathan Eiler, Supervisor, Defendants placed Plaintiff on suspension for three (3) days, effective immediately.

58.    The stated reason was that there was a complaint that Plaintiff had allegedly called a co-worker a "piece of shit."

59.    Defendants told Plaintiff that they would conduct an investigation and get back to her by February 12, 2024.

60.    Between February 9 and 14, 2024, Plaintiff did not receive any communication regarding her suspension, her employment, or Defendants' alleged investigation.

---

[1] References herein to an employee not having a disability and/or having requested reasonable accommodations for a disability are to the best of Plaintiff's knowledge.

61. On February 14, 2024, Houghton called Plaintiff and instructed her to attend a meeting at Defendants the next morning.

62. On February 15, 2024, in a meeting with Houghton and R. Setlock, Defendants terminated Plaintiff's employment, effective immediately.

63. The stated reason during the above meeting was that Plaintiff no longer worked at Defendants.

64. Plaintiff received no explanation, including the criteria as to why she was terminated and less qualified, non-disabled employees who had not sought reasonable accommodations for a disability and/or had not sought medical leave were retained.

65. Plaintiff was more qualified than the non-disabled employees who had not sought reasonable accommodations for a disability and/or had not sought medical leave who were retained when Plaintiff was terminated.

66. Before she informed Defendants of her disability and went out on medical leaves of absence, Plaintiff had no indication that her job was in jeopardy.

67. When Plaintiff was terminated, Craig Heffner ("Heffner"), Special Process Bond Operator, who had taken medical leaves of absence for a disability, also was terminated.

68. At the time of Plaintiff's termination, the following Special Process Bond Operator employees under R. Setlock's department were retained:

   a. Angela Brennan, Special Process Bond Operator;

   b. Brandon Wentz, Special Process Bond Operator;

   c. Ida Searle, Special Process Bond Operator;

   d. Rick Billus, Special Process Bond Operator;

   e. Jeff Johns, Special Process Bond Operator;

f.   Brad Keitscok, Special Process Bond Operator; and

g.   Carol Herb, Special Process Bond Operator.

69.    Defendants assigned Plaintiff's job duties and responsibilities to non-disabled employees who had not sought reasonable accommodations for a disability and/or had not sought medical leave, including Rick Billus.

70.    Plaintiff was more qualified to perform her job duties and responsibilities than the non-disabled employees who had not sought reasonable accommodations for a disability and/or had not sought medical leave, including Rick Billus, to whom Plaintiff's job duties and responsibilities were assigned.

71.    Defendants retained non-disabled employees who had not sought reasonable accommodations for a disability and/or had not sought medical leave in positions for which Plaintiff was qualified.

72.    Defendants did not offer Plaintiff a downgraded position or a position with reduced pay or any opportunity to remain employed before terminating Plaintiff's employment.

73.    At all material times hereto, Plaintiff was disabled, and/or had a record of a disability, and/or was regarded as being disabled, within the meaning of the ADA and the PHRA.

74.    Plaintiff's actual and/or perceived disability and/or record of impairment and requests for reasonable accommodations were motivating and/or determinative factors in connection with Defendants' discriminatory treatment of Plaintiff, including but not limited to, issuing her Verbal Warnings, subjecting her to a hostile work environment, suspending her, and terminating her employment.

75.    Plaintiff's requests for FMLA leave and reasonable accommodations for her disability were a motivating and/or determinative factor in Defendants' retaliatory treatment of

Plaintiff, including but not limited to, issuing her Verbal Warnings, subjecting her to a hostile work environment, suspending her, and terminating her employment.

76.     Defendants' interference with Plaintiff's FMLA rights was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including but not limited to, issuing her Verbal Warnings, subjecting her to a hostile work environment, suspending her, and terminating her employment.

77.     Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

78.     The conduct which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

79.     Defendants failed to prevent or address the discriminatory conduct referred to herein and further failed to take corrective action and remedial measures to make the workplace free of discriminatory conduct.

80.     Defendants have failed to provide a legitimate, non-discriminatory reason for Plaintiff's suspension and termination.

81.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

82.     The conduct of Defendants, as set forth above, was willful under the circumstances and warrants the imposition of liquidated damages.

83.     Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights, and their conduct warrants the imposition of punitive damages.

84.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

### COUNT I
### (VIOLATION OF THE ADA)

85.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

86.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

87.     Defendants' violations of the ADA were intentional and willful, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

88.     As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has sustained the injuries, damages, and losses as set forth herein and has incurred attorneys' fees and costs.

89.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless this Court grants the relief requested herein.

90.     No previous application has been made for the relief requested herein.

## COUNT II
## <u>(VIOLATION OF THE FMLA)</u>

91.    Plaintiff incorporates by reference the paragraphs above as if set forth herein in their entirety.

92.    By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

93.    Defendants, by issuing Plaintiff Verbal Warnings, suspending her, and terminating her employment after she used protected leave and/or requested protected leave, discriminated and retaliated against Plaintiff in violation of the FMLA.

94.    Said violations were willful, not in good faith and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA, thereby warranting the imposition of liquidated damages.

95.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

96.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

97.    No previous application has been made for the relief requested herein.

## COUNT III
## <u>(VIOLATION OF THE PHRA)</u>

98.    Plaintiff incorporates by reference the paragraphs above as if set forth herein in their entirety.

99.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

100.    Said actions were intentional and willful.

101.    As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

102.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

103.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a.     declaring the acts and practices complained of herein to be in violation of the ADA;

b.     declaring the acts and practices complained of herein to be in violation of the FMLA;

c.     declaring the acts and practices complained of herein to be in violation of the PHRA;

d.     enjoining and restraining permanently the violations alleged herein;

e.     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

f.     awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

g.      awarding compensatory damages to Plaintiff for past and future pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

h.      awarding punitive damages to Plaintiff under the ADA;

i.      awarding liquidated damages to Plaintiff under the FMLA;

j.      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees;

k.      awarding Plaintiff other such damages as are appropriate under the statutes that form the basis of this matter; and

l.      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:     */s/ Holly W. Smith*
        HOLLY W. SMITH, ESQ.
        JONATHAN D. GILMAN, ESQ.*
        1525 Locust Street
        Philadelphia, PA 19102
        (215) 545-7676 (office)
        (856) 545-8211 (fax)

Dated: February 12, 2026                *Attorneys for Plaintiff*

                                        **Seeking admission pro hac vice*